**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrey Zubkov, an individual, | No. CV 06-0599-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Health Care Cost Containment System ("AHCCCS"), an Arizona state agency, the State of Arizona, | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. # 51). Plaintiff responded and Defendants replied. Plaintiff alleges disability discrimination under the Americans with Disabilities Act ("ADA").

**I. BACKGROUND**

Plaintiff Andrey Zubkov began working for Defendant Arizona Health Care Cost Containment System ("AHCCCS") in 1991 (DSOF 1). As of September, 2003, Mr. Zubkov worked on the Data Base Team as a Data Base Specialist II, supporting the Information Services Division ("ISD") (DSOF 1). Earlier, on July 17, 2003, Mr. Zubkov made a complaint to the Human Resources ("HR") department regarding discrimination based on his age and national origin, and Mr. Zubkov renewed his allegation to HR on September 13,

2003 (PSOF, Ex. 10, 11).[1] On September 15, 2003, Ming Chen became the new supervisor of the Data Base Team, at which point he determined that all Data Base Team employees should be placed on an "on-call" rotation schedule (DSOF 4). Although Mr. Zubkov had performed on-call duties under his previous supervisor, Rich Kocher, he had not done so since October, 2001 (DSOF 4, Ex. 5).

After Mr. Chen's announcement, Mr. Zubkov told Mr. Chen he had a doctor's note specifying that he could not work on-call hours, and between September 15 and 18, 2003, the two discussed options regarding Mr. Zubkov's working hours (DSOF 8, 9).[2] Mr. Zubkov suggested that he work "4-tens," or ten hours a day, four days a week, in order to provide more after-hours on-call coverage, or to simply work past his normal work hours if an on-call situation came up at the end of the workday (DSOF 16, Ex. 5, PSOF 12). Mr. Chen rejected Mr. Zubkov's proposal on the grounds that it still did not provide 24-hour a day coverage, and alternatively suggested that Mr. Zubkov flex his time spent on-call, reducing each workday by the time spent performing on-call duties the previous night or that morning (DSOF 15, Ex. 5). This proposal did not satisfy Mr. Zubkov because it still put him on-call throughout the night (DSOF 15, Ex. 5).

Mr. Zubkov objected to 24-hour availability on the grounds that he was diagnosed with General Anxiety Disorder and Dysthymic Disorder by his physician, Dr. Todd Rowe

---

[1] Mr. Zubkov filed an EEOC Charge of Discrimination on September 23, 2003, regarding the same incidents about which he complained to HR in July and September of 2003 (DSOF, Ex. 6). Mr. Zubkov did not file a lawsuit regarding that alleged discrimination, and on March 16, 2004, the EEOC issued a Dismissal and Notice of Rights on that particular charge (DSOF 40, Ex. 16).

[2] After he initially told Mr. Chen of his inability to work on-call, Mr. Zubkov was exempt from the on-call schedule until an agreement could be reached (DSOF 9, Ex. 1, p 133:12-19). During this time, September, 2003 through January, 2004, another Data Base Team employee, Max Lee, provided coverage, and Mr. Zubkov's previous supervisor, Mr. Kocher, also provided assistance (DSOF 10, 13). Mr. Chen was available for call escalation, and two additional employees were in the process of training for on-call duties (DSOF 11, PSOF 3, Ex. 3).

1  (DSOF 18, Ex. 7). On October 7, 2003, Dr. Rowe provided AHCCCS with an Essential Job
2  Functions Questionnaire, which listed Mr. Zubkov's diagnosis and indicated that Mr.
3  Zubkov's inability to work extended to "work hours (on-call) outside of normal daily routine"
4  (DSOF 18, Ex. 7). Dr. Rowe testified that Mr. Zubkov "is someone who has generalized
5  anxiety already and has trouble sleeping. If you get called in the middle of the night with
6  someone like that, it makes it very difficult for somebody to fall back asleep. So essentially
7  you go in the next day; you only have a few hours of sleep, then it just builds and escalates
8  over time." (PSOF 6, Ex. 5, p 39:7-12).

9  On October 30, 2003, Mr. Zubkov signed, under protest, a revised Position
10 Description Questionnaire ("PDQ") that included "Performs Data Base Systems production
11 on-call support" under the list of "Major Responsibilities" (DSOF, Ex. 4). Until January 14,
12 2004, a team, comprised of Mr. Chen, ISD management and HR representatives, discussed
13 options for Mr. Zubkov (DSOF 21). The group believed that on-call duties were essential
14 to the Data Base Specialist II position (DSOF 21, Plaintiff's Ex. 4). Additionally, the group
15 determined that Mr. Zubkov's suggestions for accommodation would "create undue hardship
16 on the team, the division and the agency." (DSOF 22, Plaintiff's Ex. 4). Instead, the group
17 presented Mr. Zubkov with two options on January 14, 2004: (1) he could continue his
18 current job tasks and perform on-call duties on a rotational basis, flexing the time actually
19 spent responding into the next work day, or (2) he could transfer to a different position within
20 AHCCCS (DSOF 23, PSOF 12, Ex. 4).[3]

21 On January 15, 2004, Mr. Zubkov called in sick and notified AHCCCS the next day
22 that he desired to select the first option and stay in his current role, subject to his physician's
23 approval (DSOF 27, 28). On January 21, 2004, Dr. Rowe completed a Family Medical
24 Leave Act ("FMLA") Certification of Physician or Practitioner indicating that Mr. Zubkov
25 could not perform work of any kind (DSOF, Ex. 10). On January 22, 2004, Mr. Zubkov

---

[3] The new position offered to Mr. Zubkov included "being available to respond to on-call situations," but AHCCCS indicated that other employees within the group could manage the on-call responsibilities (DSOF 23, PSOF 13, Ex. 7, 8).

- 3 -

1 applied for short-term disability and filed an EEOC Charge of Discrimination based on
2 retaliation and disability (DSOF 35, 36, Ex. 12, 13). Standard Insurance Company approved
3 Mr. Zubkov's short-term disability claim on February 2, 2004, and Mr. Zubkov applied for
4 long-term disability benefits on April 20, 2004 (DSOF 38, 39, Ex. 14, 15). VPA Insurance
5 Company approved Mr. Zubkov's long-term disability claim on July 27, 2004 (DSOF 41, Ex.
6 17). On July 31, 2004, AHCCCS separated Mr. Zubkov from state service without prejudice
7 to apply for reinstatement within two years (DSOF 41, Ex. 18). Finally, the EEOC informed
8 Mr. Zubkov that he had the option to file a retaliation charge for his termination, and issued
9 a Determination based upon Mr. Zubkov's January 22, 2004 Charge (DSOF 44, 45, Ex. 19,
10 20).

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create

1  a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**III. DISCUSSION**

   **A. Disability Claim**

To establish a claim under the ADA, a plaintiff must show that he or she: (1) is a disabled person within the meaning of the ADA, (2) is qualified with or without a reasonable accommodation to perform the essential functions of the job, and (3) suffered an adverse employment action because of the disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). Once a plaintiff has established a prima facie case, the burden (of production) then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Finally, a burden of persuasion reverts to the plaintiff to provide evidence that the reasons put forth by the defendant constitute mere pretext. *Burdine*, 450 U.S. at 256. In the context of a motion for summary judgment, the plaintiff must raise a genuine issue of material fact that the defendant's legitimate, non-discriminatory reason for an adverse employment action was pretextual. *Snead v. Metro. Prop. & Cas. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001). Here, the parties dispute all elements of the ADA claim, each of which is material to a finding of discrimination.

   **1. Disability within the meaning of the ADA**

Under the ADA, "[t]he term 'disability' means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101. Defendants argue that Mr. Zubkov was not disabled within the meaning of the ADA prior to January 22, 2004 because he testified that his alleged disability precluded him only from performing on-call duties, instead of precluding him from

- 5 -

1 a broad class of jobs. Also, Defendants argue that Mr. Zubkov based his alleged disability
2 solely on his inability to work, and that Mr. Zubkov did not face substantial limitation of a
3 life activity, but only had trouble sleeping.

4 Mr. Zubkov contends that he was disabled within the meaning of the ADA prior to
5 January 22, 2004 because he was substantially limited in the life activities of sleeping,
6 concentrating and thinking, based on the testimony of his psychiatrist, and that he was
7 precluded from a broad class of jobs that included on-call duties. The Court finds that
8 whether or not Mr. Zubkov was disabled within the meaning of the ADA prior to January 22,
9 2004 presents an issue of material fact for trial.

**2. Qualification with or without reasonable accommodation to perform essential job functions**

12 Defendants argue that even if Mr. Zubkov proves a disability within the meaning of
13 the ADA, his claim still fails because AHCCCS engaged in the interactive process with good
14 faith and offered him a reasonable accommodation, which Mr. Zubkov rejected. Defendants
15 argue that the essential functions of Mr. Zubkov's job included the ability to provide on-call
16 support, and since he could not perform an essential function of his job, AHCCCS offered
17 to reassign Mr. Zubkov to a vacant position for which he was qualified. Defendants insist
18 that granting Mr. Zubkov's request to stay in his then-current position without performing on-
19 call duties would place an undue hardship on AHCCCS.[4] Defendants also argue that
20 AHCCCS has the liberty to change job descriptions as business requires, and claim that Mr.
21 Zubkov admitted the essentiality of on-call duties on his short-term disability form.

---

[4] The ADA specifies that failure to make a reasonable accommodation can be discrimination "unless . . . the accommodation would impose an undue hardship on the operation of the business . . ." 42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.2(p)(2)(v) (factors to be considered in an assessment of undue hardship include "the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business).

- 6 -

Mr. Zubkov insists that AHCCCS did not engage in the interactive process in good faith,[5] and that on-call duties were not an essential function of his job. Mr. Zubkov also argues that neither of the options presented by AHCCCS qualified as a reasonable accommodation, and that allowing him to stay in his then-current position without performing on-call duties would not place an undue hardship on AHCCCS. Assuming a jury finds Mr. Zubkov disabled within the meaning of the ADA, the Court finds that whether or not that disability prevented him from performing an essential function of his job presents an issue of material fact as to whether being on-call was an essential function of Mr. Zubkov's position. After determining the function of on-call duties, and assuming a disability exists, the Court then finds that whether or not AHCCCS offered Mr. Zubkov a reasonable accommodation presents an issue of material fact for trial.

### 3. Adverse employment action

Defendants argue that Mr. Zubkov's "termination" does not qualify as an adverse employment action because AHCCCS simply separated him from employment status as a result of Mr. Zubkov's receipt of long-term disability benefits. Defendants also argue that since AHCCCS provided Mr. Zubkov with a reasonable accommodation, no argument can be made that failure to do so constituted an adverse action. Defendants claim that Mr. Zubkov did not receive a "threat" of termination when he requested an accommodation, but was informed that he would be "separated" from employment without prejudice if he failed to choose one of the two options presented. Defendants also insists that the prior cancellation of his flex-time and denial of his telecommuting request are outside the scope of this litigation. Finally, Defendants argue that if AHCCCS did somehow worsen Mr. Zubkov's

---

[5]*See Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006) ("In addition, our cases make clear that the [employer] bore an affirmative obligation to engage in an interactive process in order to identify, if possible, a reasonable accommodation that would permit [the employee] to retain his employment."); *see also Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) ("The interactive process requires communication and good faith exploration of possible accommodations between employers and individual employees . . .").

1 medical condition during his employment, then he may only receive a remedy through
2 worker's compensation.

3 Mr. Zubkov argues that the failure to provide him with a reasonable accommodation
4 constitutes an adverse employment action,[6] and that AHCCCS threatened him with
5 termination when he requested an accommodation.[7] He alleges that AHCCCS "in effect
6 terminated," or constructively discharged him when it failed to provide an adequate option
7 for Mr. Zubkov to continue his employment (Doc. # 57 at 12). Mr. Zubkov also claims that
8 AHCCCS's poor treatment of him worsened his medical condition such that he was forced
9 to take medical leave.[8] Assuming that the jury reaches this element of the ADA claim, the
10 Court finds that whether or not Mr. Zubkov suffered an adverse employment action presents
11 an issue of material fact for trial.

### 4. *McDonnell Douglas* burden shifting - Discrimination

13 Despite Mr. Zubkov's prima facie case for discrimination under the ADA upon a
14 reading of the facts in a light most favorable to him, the Court finds that Defendants put forth
15 an alleged legitimate, non-discriminatory reason for Mr. Zubkov's separation from

---

[6] Defendants suggest in the Reply (Doc. # 59) that a failure to provide a reasonable accommodation is not an adverse employment action. That assumption is misplaced, however, given the statutory language of the ADA. 42 U.S.C. § 12112(b)(5)(A) ("[T]he term 'discriminate' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . .").

[7] Defendants claim that Mr. Zubkov's argument should fail because AHCCCS did not threaten to "terminate" him, but only to separate him from employment. The Court finds that the technical distinction does not preclude Mr. Zubkov's argument that some sort of threat to end his employment, termination or otherwise, could be an adverse employment action from a jury's point of view.

[8] Defendants argue that any deterioration in Mr. Zubkov's medical condition during his employment at AHCCCS could only be remedied through worker's compensation. The Court agrees that in a tort action for damages, injuries sustained at work typically find remedy from the worker's compensation system. Mr. Zubkov, however, does not seek tort damages, but only argues that poor treatment at work, exacerbating his medical condition, could qualify as an adverse employment action.

- 8 -

employment in July, 2004.[9] Defendants claim that AHCCCS's decision to separate Mr. Zubkov from employment without prejudice resulted from his request for and receipt of long-term disability benefits, not because he had a disability, should one be found. Because Mr. Zubkov alleged multiple adverse employment actions, not just the separation from employment, this case will proceed to trial. Accordingly the Court cannot grant summary judgment to Defendants based on Defendants' proffered legitimate, non-discriminatory reason for the separation. Moreover, as indicated above, the Court has found a question of fact as to how Plaintiff arrived at being separated from service. Only once that issue is resolved can a jury determine whether discrimination was the motive for Plaintiff's ultimate inability to work for AHCCCS.

Based on the foregoing, the Court finds issues of material fact regarding Mr. Zubkov's prima facie case. This question of fact arises from the facts specifically addressed by the Court. In this Order, the Court offers no opinion as to whether any other facts might be relevant to a claim or defense at trial. The Court simply finds that the foregoing disputed elements are sufficient to overcome summary judgment on Mr. Zubkov's ADA discrimination claim.

**C. Retaliation Claim**

To establish a retaliation claim, a plaintiff must show: (1) engagement in a protected activity under the ADA, (2) an adverse employment action, and (3) a causal link between the two. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003). If the plaintiff establishes a prima facie case, the defendant has the burden of articulating a legitimate, non-retaliatory reason for its action. *Porter v. California Dep't of Corrections*, 419 F.3d 885, 894 (9th Cir. 2005). Once the defendant has presented a purpose for the action, the plaintiff bears the ultimate burden of providing evidence that the defendant's reason is "merely a pretext for

---

[9]Upon a careful inspection of the motions, the Court finds an alleged legitimate, non-discriminatory action related only to Mr. Zubkov's separation from employment in July, 2004. None of Mr. Zubkov's other theories of adverse employment action were specifically rebutted by Defendants as legitimate, non-discriminatory actions.

- 9 -

1 a retaliatory motive." *Id.* A defendant's retaliatory intent may be inferred "from the
2 proximity in time between the protected action and the allegedly retaliatory discharge."
3 *Miller v. Fairchild*, 797 F.2d 727, 731 (9th Cir. 1986). Here the parties dispute the second
4 and third elements of the retaliation claim, each of which is material to a finding of
5 retaliation.

### 1. Engagement in a protected activity

7 The parties do not dispute that Mr. Zubkov engaged in a protected activity when he
8 filed an EEOC Charge of Discrimination on September 23, 2003. Mr. Zubkov argues that
9 his complaints to HR on July 17, 2003 and September 13, 2003 also qualify as protected
10 activities.

### 2. Adverse employment action

12 Defendants do not specifically dispute the legitimacy of Mr. Zubkov's allegations
13 regarding adverse employment action in the retaliation context, but only acknowledge that
14 he argues the requirement of on-call duties as an adverse employment action, as well as the
15 separation from employment in July, 2004. The Court, however, in an abundance of caution,
16 assumes Defendants to put forth the same objections as stated in the discrimination context.
17 Mr. Zubkov also argues that AHCCCS acted adversely when it required him to choose
18 between the performance of on-call duties and an "unreasonable accommodation," leaving
19 him with no options to continue his employment. He includes the threat of termination or
20 separation, a change in job description, and other theories advanced in his discrimination
21 claim as adverse employment actions that were retaliatory. As in the discrimination analysis,
22 the Court finds that whether or not Mr. Zubkov suffered an adverse employment action
23 presents an issue of material fact for trial.

### 3. Causal link

25 Defendants, referencing only Mr. Zubkov's September 23, 2003 EEOC Charge, argue
26 that no causal link exists between any alleged adverse employment action and a protected
27 activity, since Mr. Zubkov filed the EEOC Charge after learning that AHCCCS planned to
28 add on-call duties to his job description. Also, Defendants claim that Mr. Zubkov's

1 separation from employment in July, 2004 is not sufficiently close in time to the protected
2 activity to infer causation.  Mr. Zubkov maintains that his complaints to HR qualify as a
3 protected activity, and a causal link exists, at least between his complaint dated September
4 13, 2003 and the time at which Mr. Chen informed him of the additional on-call duties during
5 the week of September 15, 2003.

6 The Court finds that Mr. Zubkov's complaint to HR does qualify as a protected
7 activity under the ADA.  *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d
8 1276, 1285 (9th Cir. 2001) (finding that an employee complaint to the Human Resources
9 department was a protected activity under Title VII); *See also Barnett v. U.S. Airways, Inc.*,
10 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc) ("[W]e join our sister circuits in adopting the
11 Title VII retaliation framework for ADA retaliation claims."), *vacated on other grounds, U.S.*
12 *Airways v. Barnett*, 535 U.S. 391 (2002).  The nearness in time between the September 13,
13 2003 complaint and the change in employment duties September 15, 2003 through October,
14 2003 is sufficient to create an issue of material fact regarding the causal link between a
15 protected activity and an alleged adverse employment action.

### 4. *McDonnell Douglas* burden shifting - Retaliation

17 Defendants offer a conclusory statement that "AHCCCS provided legitimate non-
18 discriminatory, non-retaliatory reasons for its actions," but the Court does not find any
19 specific discussion of the sort (Doc. # 59 at 11).  Assuming that Defendants advance the
20 same argument as above, that Mr. Zubkov's ultimate separation from employment was
21 legitimate and non-discriminatory based on his long-term disability claim, the Court
22 acknowledges that  argument and makes the same finding as above.

23 Based on the foregoing, the Court finds issues of material fact regarding Mr. Zubkov's
24 prima facie case for retaliation and Defendants' proffered legitimate, non-discriminatory
25 reason as to one alleged adverse employment action.  The Court finds that the foregoing
26 disputed elements alone are sufficient to overcome summary judgment on Mr. Zubkov's
27 ADA retaliation claim.

28 Based on the foregoing,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. 51) is DENIED in its entirety.

DATED this 9th day of August, 2007.

James A. Teilborg
United States District Judge